**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **CARTER CONCRETE** | * | |
| **STRUCTURES, INC.,** | | |
| **Plaintiff** | * | |
| | | |
| **v.** | * | **CIVIL NO.  JKB-15-1330** |
| | | |
| **WHITING-TURNER** | * | |
| **CONTRACTING COMPANY,** | | |
| **Defendant** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM</u>**

*I.  Background*

      Plaintiff Carter Concrete Structures, Incorporated ("Carter"), filed suit against Defendant Whiting-Turner Contracting Company, essentially alleging Whiting-Turner did not pay all that Carter was due under a subcontract for Carter to provide concrete fabrication and related work as part of Whiting-Turner's general contract to renovate the Alexander Memorial Coliseum on the campus of Georgia Institute of Technology in Atlanta, Georgia.  (Compl., ECF No. 1.)  The original complaint was superseded by an amended complaint (ECF No. 11), which omitted some of the original counts.  Whiting-Turner's motion to dismiss the original complaint (ECF No. 4) is, therefore, moot.  Now pending before the Court is Whiting-Turner's motion to dismiss the amended complaint for failure to state a claim for relief or, in the alternative, for summary judgment.  (ECF No. 13.)  The motion has been briefed (ECF Nos. 18 & 21) and requires no hearing, Local Rule 105.6 (D. Md. 2014).  The motion will be granted in part and denied in part.

## II.  Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

## III.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere

existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### IV.  Allegations of the Complaint

According to the amended complaint (hereinafter referred to as the "complaint"), the project involving the Alexander Memorial Coliseum ("AMC") "was a high-profile, state-of-the-art construction project." (Am. Compl. ¶ 5.) The AMC's interior was demolished and replaced with a new, updated, and modernized facility, while the original dome, considered historically significant, was retained. (*Id.*) The new facility, which is a basketball arena, is now known as the Alexander Memorial Coliseum Replacement Facility ("AMC-R") or the McCamish Pavilion. (*Id.* ¶¶ 5, 6.)

Whiting-Turner entered into a design-build contract with the Board of Regents of the University System of Georgia ("Owner") for the project. (*Id.* ¶ 6.) Timing was critical as the new facility had to be completed and operational before Georgia Tech's 2012-13 basketball season began, and this was successfully done. (*Id.* ¶¶ 7, 8.) The work of constructing the concrete foundation and structural frame was subcontracted by Whiting-Turner to Carter. (Am. Compl. Ex. A, Subcontract, ECF No. 11-2.)

Under the subcontract, Carter agreed "to commence, pursue diligently and complete the work in such sequence and order and according to such schedules as Contractor shall establish from time to time during the course of the work, and shall perform the work so as not to delay any other trades or contractors, time being of the essence of this Subcontract." (*Id.* art. 4(a).) The subcontract also provided,

> To the fullest extent permitted by applicable law, Contractor shall have the right at any time to delay or suspend the work or any part thereof without incurring liability therefore [*sic*]. An extension of time shall be the sole and exclusive remedy of Subcontractor for any delays or suspensions suffered by Subcontractor, but only to the extent that a time extension is obtained from the Owner, and Subcontractor shall have no right to seek or recover from Contractor any damages or losses, whether direct or indirect, arising from or related to any delay or acceleration to overcome delay, and/or any impact or effect of such delays on the work.

(*Id.* art. 4(b).)

The subcontract required Carter to give Whiting-Turner notice of "any dispute, controversy, or claim for additional compensation or time extensions, except for payment for extra or additional work expressly directed by Contractor in accordance with Section 6(a) of this Subcontract, . . . no later than seven (7) days following the occurrence on which such claim is based . . . ." (*Id.* art. 6(d).) As a subcontractor, Carter also agreed it "shall not cause any unnecessary interference with or delay to the Contractor or to other subcontractors on said Project . . . ." (*Id.* art 9(b).) The subcontract included both a choice-of-law clause and a forum-selection clause:

> This Subcontract shall be governed by the laws of the State of Maryland, without regard to principles of conflict of laws. Any action or suit arising hereunder shall be brought in the jurisdiction where Contractor's principal office is located without regard to principles of conflict of laws or forum non conveniens.

4

(*Id.* art. 9(r).)   Finally, the subcontract provided, "All other legal or equitable claims by Subcontractor, including claims against Owner of quantum meruit or unjust enrichment, are hereby waived and released."  (*Id.* art. 9(v).)

The core of Carter's complaint is the following:

13.    To the dismay and surprise of Carter, Whiting-Turner forced Carter to perform its concrete work in a radically different manner, method, and sequence from what was anticipated, including, but not limited to the following snapshot of how things were radically different from what was anticipated:

   a.   Whiting-Turner blocked and restricted Carter's access to work areas;

   b.   Whiting-Turner constructively accelerated Carter when the restricted areas became available;

   c.   Whiting-Turner instructed other subcontractors to work simultaneously in the same locations, further obstructing Carter's access to work areas;

   d.   Whiting-Turner allowed other subcontractors to restrict Carter's access to its work;

   e.   Whiting-Turner failed to provide Carter with access to work areas;

   f.   Whiting-Turner actively hindered the work of Carter, and permitted subcontractors to obstruct the work of Carter;

   g.   Whiting-Turner failed to properly schedule and manage the subcontractors; and

   h.   Whiting-Turner required Carter to work in multiple locations, thus hopscotching around the project in a piecemeal manner, which was inconsistent with the Project Schedule and logistics plan.

14.    Whiting-Turner caused Carter to increase the size of its crews, work more man hours, work overtime frequently, increase the number, duration, and types of equipment, provide more management personnel, and so forth, all of which resulted in significant additional and unanticipated costs to be incurred by Carter.

(*Id.* ¶¶ 13, 14.)

A major point of contention for Carter was Whiting-Turner's change in location of a temporary access ramp into the project; Carter did not incur the unanticipated costs it claims in

the complaint as a result of the changed location of the temporary access ramp until after the ramp was removed "and Carter was forced to commence its work in that area from scratch, a highly inefficient method of construction." (*Id.* ¶¶ 17, 18.) Carter alleges it "repeatedly proposed an alternative temporary ramp which would be less disruptive, which [was] rejected by Whiting-Turner." (*Id.* ¶ 20.) Carter seeks a total of $563,939.07 as additional compensation "for its unanticipated costs due to sequencing, manner, and method changes required by Whiting-Turner." (*Id.* ¶ 23.) Beyond that, Carter alleges it requested additional compensation for a series of additional work items for which Carter has not been paid even though Whiting-Turner approved almost all of these additional work items. (*Id.* ¶¶ 24, 25.) Examples of these items are given in the complaint. (*Id.* ¶¶ 26-35.) Carter claims the principal amount owed under the contract is $861,445.96. (*Id.* ¶ 51.)

Carter submitted applications for monthly draw and retainage on June 21, 2012; the parties continued their negotiations concerning amounts owed to Carter for work on the project through June 23, 2012. (*Id.* ¶¶ 36, 37.) On November 19, 2014, Whiting-Turner remitted payment in the amount of $181,721.23 as final payment. (*Id.* ¶ 38.) A few days later, Carter suggested Whiting-Turner agree to allow Carter to deposit the check as the undisputed portion of Carter's claim, but Whiting-Turner refused the request. (*Id.* ¶¶ 39, 40.) In turn, Carter rejected the "short payment" on January 5, 2015. (*Id.* ¶ 41.) On or about May 8, 2015, Whiting-Turner provided a replacement check for the check Carter rejected; the replacement check was the same amount as the initial check. (*Id.* ¶ 42.) As before, Carter and Whiting-Turner had the same unproductive exchange of ideas on whether to treat the replacement check as a final payment or as the undisputed portion of the amount due to Carter. (*Id.* ¶¶ 44, 45.) This suit followed immediately afterward.

Carter alleges claims for relief in five counts:

1. Breach of contract under Maryland law.

2. Violation of the Maryland Prompt Pay Act.

3. Conversion/trespass to chattel under Maryland law.

4. Conversion under Georgia law.

5. Stubborn litigiousness under Georgia law.

In addition to the exhibits attached to the complaint, both sides have submitted exhibits with their briefing papers.  (ECF Nos. 11, 18, 21.)

## V. Analysis

### A. Count 1 – Breach of Contract

Carter alleges that Whiting-Turner breached the subcontract when it did not timely make payments, timely process and issue change orders, or timely provide Carter with access to work areas; when it blocked, restricted, and obstructed Carter's access to work areas; when it unreasonably delayed and hindered Carter's performance; when it accelerated Carter's work without reasonable compensation; and when it failed to properly schedule and manage its subcontractors.[1]  Whiting-Turner contends that all counts should be dismissed with prejudice or, alternatively, that the Court should grant summary judgment on all claims.  As to Count 1, Whiting-Turner has not plausibly argued that Carter's claims fail to state a claim for relief under

---

[1] In its opposition, Carter has pointed out that this claim, which is governed by Maryland law, is subject to a duty for the contracting parties to act in good faith and deal fairly with one another.  (Pl.'s Opp'n 10 (citing *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (2009)).)  *See also Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 174 (Md. 1964) ("in every contract there exists an implied covenant that the parties thereto will act in good faith and deal fairly with the others").  This duty "simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract."  *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992).  *But see Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (suggesting *Parker's* summation of the duty's scope may be "under-inclusive of the array of the potential applications of the doctrine").  Carter's allegations allow an inference that Whiting-Turner's conduct was inconsistent with this implied covenant.

Rule 12(b)(6).  Instead, its arguments rest upon contract interpretation, application of the contract to facts, and reference to evidentiary exhibits.  Thus, Whiting-Turner's contentions are properly cast as a request for summary judgment under Rule 56.  The Court notes discovery has not yet occurred in the case; this bears upon the disposition of Whiting-Turner's motion.   Also, Whiting-Turner does not dispute that it owes Carter $181,721.23.  (Def.'s Mot. Supp. Mem. 13.) Given that concession, summary judgment for Whiting-Turner and against Carter at this early stage is decidedly inappropriate.

### 1.  *Compliance with Contractual Notice Provisions*

Whiting-Turner claims Carter waived all disputes, controversies, or claims for additional compensation by failing to comply with the subcontract's notice provisions.   (*Id.* 15.) Whiting-Turner relates that after about five months on the job, Carter on January 3, 2012, sent Whiting-Turner a letter in which Carter alleged the scope and sequencing of its work were quite different from the contracted scope of work.  (Def.'s Mot. Supp. Mem. 9; Ex. D.)  Carter stated, "Being the successful competitive bidder, we planned to perform our work per the bid document schedule outlining unimpeded access for the concreting operations." (*Id.*)  Instead, Carter said, it had worked where it could, when it could, collaborating with Whiting-Turner and other trades on a daily or weekly basis, shifting its work hours to accommodate steel erection, deep foundation remedies and progress, and obstructions.  (*Id.*)  Carter provided revised milestone dates for its portion of the work and an estimate of additional costs it expected to incur based on the difficulties it had encountered.  (*Id.*)  Carter expressed a willingness to explore opportunities to reduce the time and costs it anticipated, but "reserv[ed] the right to recover from unanticipated work, unforeseen effects and project delays," promising to "submit more exact information when known."  The total estimated anticipated costs in this letter were $337,000.  (*Id.*)

8

In a letter dated January 6, 2012, Whiting-Turner rejected any claim that Carter might make for "any additional costs for alleged re-sequencing, loss of productivity, or otherwise in conjunction with the work." (Def.'s Mot. Ex. E.) Whiting-Turner "disagree[d] that Carter's scope of work and re-sequencing of the project [was] 'quite different' from the original contract," and indicated that any re-sequencing "intimately involved" Carter in its planning, without any indication by Carter that re-sequencing decisions would have a monetary impact on Carter's operations. (*Id.*) Whiting-Turner said article 4 of the subcontract not only "invalidate[d] any claims Carter has for additional compensation due to loss [*sic*] productivity, but it la[id] the ground for potential claims by others if Carter d[id] not meet published schedule dates." (*Id.*)

Carter's president, Mr. Sam Carter, provided an affidavit with its opposition to Whiting-Turner's motion. (Pl.'s Opp'n Ex. 1, ECF No. 18-2.) In the affidavit, Mr. Carter relates the back-and-forth nature of Carter's communications with Whiting-Turner from early May through August 2012; the communications were directed toward reaching a final resolution of Carter's claims for compensation. (*Id.* Carter Aff. Aug. 21, 2015, ¶¶ 10-11.) The affidavit indicates Carter claims the following amounts: 1) the net amount of $43,162.89 for additional work on the project; 2) $563,939.07 for additional compensation for completing the subcontract work; and 3) $230,198.62 for retainage due for work on the project. (*Id.* ¶¶ 20-22.) Included with Mr. Carter's affidavit was a letter sent by Carter dated April 17, 2012, to Whiting-Turner repeating Carter's estimated, anticipated additional costs from its January 3, 2012, letter; the amount of estimated, anticipated costs in that letter was indicated to be $395,000. (*Id.* Ex. C-1, ECF No. 18-5 at p. 7.) Attached to the complaint were documents showing the parties continued

to communicate about the matter in 2014 and 2015.  (Am. Compl. Ex. C, F–J, ECF No. 11-4,

Nos. 11-7–11-11.)

In none of the communications leading up to this lawsuit and supplied to the Court is

there any assertion by Whiting-Turner that Carter is not entitled to additional compensation

because of a failure by Carter to provide proper notice under the contract.  The absence of such a

stated position during the protracted course of the parties' pre-suit negotiations lends credence to

Mr. Carter's assertion in his affidavit that "Whiting-Turner departed from and waived the notice

and change order procedures otherwise required by the Subcontract . . . ."  (Carter Aff. ¶ 24.)  At

minimum, a genuine dispute of material fact exists as to whether Whiting-Turner waived

enforcement of the notice provision.[2]  Furthermore, even if Whiting-Turner did not waive the

notice provision's enforcement, the clause is not as narrowly worded as might be supposed from

Whiting-Turner's argument.  The clause requires notice of a claim for additional compensation

"no later than seven (7) days following the occurrence on which such claim is based."  It does

not say that notice may *only* be given within seven days after an occurrence upon which a claim

is based.  The seven-day period is simply the last opportunity to provide notice.  Effective notice,

under the notice provision, can be provided in advance of an occurrence upon which a claim is

based, as Carter did here, more than once.

The Court makes one other observation with regard to the issue of notice in Count 1.

Based upon the documents before the Court, it is unclear when Carter gave notice of its claim for

additional compensation in the amount now claimed in its complaint, $861,445.96.  It is possible,

---

[2]  The Court is not persuaded by Carter's argument that the notice provision, *i.e.*, article 6(d) of the subcontract, is not applicable to its claim for additional compensation.  Carter's position rests upon a strained interpretation of that clause.  The Court concludes the notice provision does apply.  Even so, the evidence permits a fact-finder to find that Whiting-Turner waived its enforcement.

though not definite at this stage of the case, that Carter did not give timely notice as to all of this amount.  This is one more evidentiary matter that requires resolution.

### 2.  *Bar to Plaintiff's Unilateral Modification of the Contract Price*

Whiting-Turner asserts Carter is not allowed to modify unilaterally the price of the subcontract due to unanticipated, changed circumstances.  This contention is interesting, but unpersuasive.  In the Court's view, Carter has made a claim for additional compensation under the subcontract, which is allowed according to the terms of the agreement.  Carter has also asserted Whiting-Turner's breach of contract that resulted in damage to Carter.  None of what Carter has claimed amounts to a unilateral modification of the contract price.

### 3.  *Express Waiver and Release by Plaintiff*

Whiting-Turner asserts Carter expressly waived and released any claims it had for additional compensation when Carter submitted periodic affidavits to Whiting-Turner, stating Carter was releasing Whiting-Turner from any claims Carter may have as of the dates it was submitting invoices for payment.  Whiting-Turner provided copies of Carter's affidavits.  (Def.'s Mot. Ex. C, ECF No. 13-6.)  However, an additional issue of fact is created by Carter's assertion that some of Whiting-Turner's exhibits are not authentic.  Carter has provided copies of the same affidavits, but showing a reservation of rights as to amounts due to delays and disruption of work.  (Pl.'s Opp'n Ex. 1-D, ECF No. 18-6.)  This discrepancy will need to be resolved.  Unresolved, it presents a genuine dispute of material fact as to whether Carter is entitled to claim additional compensation.

### 4.  *Statute of Limitations*

Whiting-Turner's last argument regarding the statute of limitations as to Count 1 is also made as to all other counts in the complaint.  Whiting-Turner asserts that Maryland's general,

three-year statute of limitations applies. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2013.) Carter does not dispute the statute's applicability. Whiting-Turner's contention is that Carter's cause of action accrued prior to May 8, 2012; hence, because Carter filed suit on May 8, 2015, its suit must be dismissed. (Def.'s Mot. Supp. Mem. 20.) Given the back-and-forth nature of the communications between the parties over Carter's claim for additional compensation, given that the disagreement continued after the three-year mark, and given that the final settlement between the parties was not intended to occur, and did not occur, before the three-year mark, the claim cannot reasonably be viewed as only existing before that point. However, it is possible that discrete portions of Carter's claim were incurred prior to May 8, 2012. During the next phase of the case, the parties have an opportunity to present evidence as to when specific damages were suffered in relation to the statute of limitations and what effect should be given to the parties' continuing negotiations past May 8, 2012.

### B. *Count 2 – Maryland Prompt Pay Act*

Whiting-Turner's only argument as to Count 2 is its prior one as to the statute of limitations. Having previously found room for dispute as to what elements of Carter's damage claim are affected by the statute of limitations, the Court finds Whiting-Turner's request for summary judgment to be without merit.

### C. *Count 3 & Count 4 – Conversion*

Whiting-Turner asserts Counts 3 and 4 of the complaint fail to state a claim for relief. The Court agrees.

Carter alleges that Whiting-Turner received substantial payments from Owner for Carter's work and that Carter has not been paid. Carter alleges any such monies paid to Whiting-Turner were Carter's property and that Whiting-Turner's failure to pay these monies to

Carter constitutes conversion.   (Am. Compl. ¶¶ 67-70, 75-78.)   Count 3 claims unlawful conversion under Maryland law, and Count 4 claims unlawful conversion under Georgia law.

In Maryland, money is generally "not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 833 n.3 (Md. 2004); *see also Allied Inv. Corp. & Allied Venture P'ship v. Jasen*, 731 A.2d 957, 966 (Md. 1999).   As in the *Jasen* case, Carter's claim of conversion fails for lack of specificity.   Carter does not allege that specific, identifiable funds were paid by Owner to Whiting-Turner on Carter's account.   Nor does Carter allege that the funds paid by Owner to Whiting-Turner on Carter's account were in excess of what Whiting-Turner paid to Carter.   (It is clear that Carter was paid some amounts of money by Whiting-Turner, and a reasonable inference is drawn that whatever Carter received from Whiting-Turner was derived from whatever Owner paid Whiting-Turner.)   Finally, Carter does not allege that any monies received on its account were maintained in a separate, segregated account by Whiting-Turner. Under *Jasen*, these are fatal deficiencies in Carter's claim in Count 3.   731 A.2d at 967. Furthermore, a contracting party's failure to pay the contract price "is not conversion but merely breach of contract.   If there is no Maryland case that has specifically stated this distinction, it is probably because it is so generally understood it is not frequently litigated." *Brand Iron, Inc. v. Koehring Co.*, 595 F. Supp. 1037, 1040 (D. Md. 1984) (citing Prosser, *Law of Torts* § 15, at 82-83 (4th ed. 1971); *Restatement (Second) of Torts* § 242, comment f (1965)).   *See also Johnson v. Wheeler*, 492 F. Supp. 2d 492, 510-11 (D. Md. 2007) (dismissing conversion claim because plaintiffs were seeking monetary damages, not return of specific funds being held separate and apart).

For the same reasons under Georgia law, Carter's Count 4 fails to state a claim for conversion.[3]  *See Decatur Auto Center, Inc. v. Wachovia Bank, N.A.*, 583 S.E. 2d 6, 9, n.8 (Ga. 2003) ("a cause of action for conversion 'does not lie on account of a mere failure to pay money due under a contract'"); *Kerr v. Cohen*, 548 S.E. 2d 17, 19 (Ga. Ct. App. 2001) (plaintiff sought to recover a sum of money in a general sense, not specific money to which he had title; therefore, plaintiff had no cause of action for conversion).  Carter's claims for conversion in Counts 3 and 4 are merely repackaged versions of its breach-of-contract claim in Count 1.

Another potential basis for dismissal of these two counts is found in article 9(v) of the subcontract, which states, "All other legal or equitable claims by Subcontractor, including claims against Owner of quantum meruit or unjust enrichment, are hereby waived and released." However, Whiting-Turner did not argue the point, and the Court need not address it.

### D. Count 5 – Stubborn Litigiousness

In the complaint's final count, Carter asserts it is entitled to recover under a Georgia statute, Ga. Code Ann. § 13-6-11, Carter's expenses of litigation, including its attorney's fees, incurred in prosecution of this case against Whiting-Turner because Whiting-Turner's actions were taken in bad faith.   (Am. Compl. ¶ 84.)   Carter indicates in its opposition to Whiting-Turner's motion that it is bringing Count 5 "[t]o the extent Carter may assert any claims under Georgia law."  (Pl.'s Opp'n 25.)  Given the Court's dismissal of the only other substantive claim Carter made under Georgia law, the Court concludes Count 5 may not lie.  Consequently, Count 5 will be dismissed.

---

[3]  Because the Court is dismissing Count 4 under Rule 12(b)(6), it need not address the question of whether Carter may properly assert a claim founded on Georgia law in this case, based as it is on a contract governed by Maryland law.

*VI.  Conclusion*

In a separate order, Counts 3, 4, and 5 will be dismissed, and Defendant's motion for summary judgment will be denied as to the remaining counts.

DATED this 4th day of March, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge